UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JASON COLON,                    :
                                :
          Petitioner            :   No. 4:CV-05-2519
                                :
     vs.                        :   (Complaint Filed 12/06/05)
                                :
LOUIS FOLINO,                   :   (Judge Muir)
                                :
          Respondent            :

**Memorandum**

January 11, 2008

Petitioner, Jason Colon, filed the instant petition for
writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He
attacks a July 17, 1997 conviction imposed by the Court of
Common Pleas for York County, Pennsylvania. (Doc. No. 1).  For
the reasons that follow, the Court will deny the petition.

**Background**

The following background has been extracted from the
Pennsylvania Superior Court's November 10, 2003 Opinion
affirming the trial court's denial of petitioner's second PCRA
petition.  (Doc. 21, pp. 964a-968a).

> Co-defendants[,] [Colon] and Felix Rodriguez[,]
> ["Rodriguez"] were engaged in an ongoing series of
> drug transactions...One of the persons working for
> them in these drug transactions was Jason Nesbit
> ["Nesbit"].

Someone entered the home of Monique Wells["Wells"], where Nesbit was staying and robbed and beat him severely.  The intruder took both money and drugs, which were the property of Colon and Rodriguez. Colon and Rodriguez suspected that the victim in this case, Edgar Day ["Day"], was the one who beat and robbed Nesbit.

Arrangements were made by Colon and Rodriguez to have Adam Byke ["Byke"], a New York "hitman", come to York to deal with [Day]. Byke was known to have killed another person previously.  Prior to trial[,] Byke himself was killed in an unrelated occurrence in New York.

Colon and Rodriguez made arrangements with several of the underlings in their drug ring, including [Day's] girlfriend, Wells, to lure Day to a location where he could be confronted.   When the confrontation occurred Byke shot [Day] at close range, and caused his death.

Police interviewed the various participants. Initially all of them denied any knowledge of the crime. However, Nesbit, Michelle Ocasio ["Ocasio"], and Wells eventually agreed to cooperate with the Commonwealth, and provided testimony which detailed the actions of Rodriguez and Colon[,] which led to the death of [Day].

In addition to the testimony of the co-conspirators, Nesbit, Wells and Ocasio, the Commonwealth also presented the testimony of Brian McNealy ["McNealy"].   McNealy was a cell mate of [Rodgriguez] after the arrest of Rodriguez for the murder.

McNealy's testimony about the conversation with Rodriguez was as follow:

When they arrived at the house, [Day] refused to go

2

in.  He wouldn't go in.  So [Wells] told him to hold on, this is what [Rodriguez] was telling me.  He told her to hold on when she went into the house.  She told him [Day] refused to come in.  That Felix told her to get the nigger in the car in the alley.

When [Wells]. . .went back out. . .[and] saw he had walking [sic]. That's when [Wells began] screaming Hello Edgar [Day] I take you home and [Ocasio] went out there and they got back in the car.

And when they got back in the car [,] [Rodriguez] said it was him Will [sic] right there.   Jason Colon, Jason Nesbit, Dude Adam Byke, all of them jump in the cars follow right behind [Byke].

[Wells] hit the alley of Mason Ave.  When she hit the alley [,] that's when [Rodriguez,] he blinked the lights.  He flashed the lights and made her pull right over.

And then he told me that as soon as Byke got out of the car he grabbed [Day] and told him, Yo, you robbed my boy[,] he [sic] took money it must have been $2000 that [Nesbit] was selling for him and he shot him.

A jury convicted Colon of third degree murder and conspiracy to commit third degree murder.[1] Thereafter, the trial court sentenced Colon to an aggregate prison term of 50 to 100 years.

Id at pp. 964a-966a.

On August 25, 1997, petitioner filed a petition under Pennsylvania's Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541, et seq. ("PCRA").  (Doc. No. 20, pp. 713a-719a).  At

---

[1]18 Pa.C.S.A. §§ 2502, 903.

the same time, Petitioner also filed a direct appeal to the Pennsylvania Superior Court. <u>Id</u>. at p. 720a.

By Order dated September 25, 1997, the York County Court of Common Pleas deemed petitioner's PCRA petition premature and dismissed the petition, "subject to being refiled after the direct appeal is completed." <u>Id</u>. at p. 721a.

On June 9, 1998, the Pennsylvania Superior Court dismissed and returned petitioner's direct appeal for failing to file a brief. <u>Id</u>. at p. 722a.

On October 29, 1999, petitioner filed a PCRA petition, seeking to have his direct appeal rights reinstated. <u>Id</u>. at pp. 723a-728a. By Order dated December 9, 1999, the PCRA Court appointed counsel for Colon and scheduled a hearing. <u>Id</u>. at p. 729a.

On January 28, 2000, a hearing was held on Colon's PCRA petition. <u>Id</u>. at pp. 730a-732a. The PCRA Court determined Colon's PCRA petition was timely filed, reinstated petitioner's direct appeal rights, and appointed appellate counsel. <u>Id</u>.

On February 7, 2000, petitioner's counsel filed Post Verdict Motions in order to preserve petitioner's appeal

4

issues.  <u>Id</u>. at pp. 733a, 734a.

On February 22, 2000, Colon filed his direct appeal in which he raised the following issues:

1. The evidence was insufficient to sustain the verdicts of murder and conspiracy.

2. Trial Court abused its discretion by imposing an excessive sentence.

3. Trial court erred in admitting the testimony of Brian McNealy, a prison cellmate of Rodriguez, regarding a statement made by Rodriguez, implicating Colon.

<u>Id</u>. at p. 736a-755a.

On February 27, 2001, the Superior Court issued a Memorandum Opinion affirming Petitioner's conviction and sentence.  <u>Id</u>. at p. 789a-798a; <u>see</u> Commonwealth vs. Colon, 776 A.2d 1003(Pa. Super. 2001).  While the Superior Court addressed petitioner's first two issues on the merits, it found that pursuant to Rule 302 of the Pennsylvania Rules of Appellate Procedure, petitioner had waived his right to object to the admission of McNealy's testimony, and to the court's jury instruction based on this testimony, because he did not raise these objections at trial, or in post-trial motions. <u>Id</u>. at p. 795a.

5

On March 29, 2001, Colon filed a petition for allowance of appeal to the Supreme Court of Pennsylvania. (Doc. No. 21, pp. 799a-813a.  He raised the following issues for review:

> A.   Whether the Superior Court acted erroneously and arbitrarily when it determined that appellant had waived his right to appellate review of the trial court's jury charge where appellant had raised the claim in his 1925(B) statement and where the trial court had addressed the claim in its 1925(A) opinion?
>
> B.   Whether the Superior Court erred when it determined that appellant had waived his right to appellate review of trial counsel's ineffectiveness where the claim was raised on direct appeal by newly appointed appellate counsel?
>
> C.   Whether trial counsel rendered ineffective assistance of counsel when he failed to object to the admission of a non testifying co-defendant's statement against appellant, and failed to object to the trial court's jury charge advising the jury to consider this statement as evidence against appellant?
>
> D.   Whether the trial court erred when it advised the jury that it could consider a non testifying co-defendant's statement, which implicated appellant, as evidence against appellant?
>
> E.   Whether the trial court abused it discretion when it sentenced appellant to consecutive maximum sentences?

6

> F.    Whether the Superior Court erred when it
> determined that the Commonwealth had
> produced sufficient evidence to sustain
> verdicts of guilt on the charges of third
> degree homicide and conspiracy to commit
> murder?

Id. at p. 804a.  On August 7, 2001, the Pennsylvania Supreme

Court denied Colon's Petition for Allowance of Appeal.  Id. at

p. 815a; see Commonwealth v. Colon 566 Pa. 677, 784 A.2d 114

(2001)(Table).  Colon did not file a petition for writ of

certiorari with the United States Supreme Court.

On June 11, 2002, Colon filed a second PCRA petition in

which he raised the following issue:

> Ineffective assistance of counsel was rendered for
> the following reasons: counsel would not let me take
> the stand on my behave (sic).

(Doc. No. 21, pp. 817a-822a).  By Order dated June 18, 2002,

the PCRA Court appointed counsel and set the matter for a

hearing.  Id. at p. 816a.

On August 20, 2002 a hearing was held on the petition.

Id. at pp. 823a-863a.  During the hearing, Colon's counsel

sought to include additional issues for review.  Id. at p.

825a.  However, because Colon was not given enough time to

collect all his paperwork before being transferred to Court,

7

the trial Court continued the hearing, keeping the record open until Colon was able to provide the Court with the additional issues in writing. _Id_. at p. 844a.   The Court reconvened Colon's PCRA hearing on November 19, 2002. _Id_. at pp. 823a-905a. At that time the following issues were raised and addressed by the trial court:

> 1.   Trial counsel erred in refusing to allow Colon to take the stand.
>
> 2.   Trial counsel erred in failing to object to the testimony of Brian McNealy.
>
> 3.   The trial court erred when it instructed the jury that it could consider Mr. McNealy's testimony as against Colon.
>
> 4.   Trial counsel failed to adequately cross-examine the co-defendants, who petitioner state where "coerced into testifying against him."
>
> 5.   Trial counsel erred in failing to request a severance.

_Id_. At the conclusion of the hearing, the trial court denied Colon's PCRA petition. _Id_.

On December 18, 2002, petitioner filed a direct appeal to the Pennsylvania Superior Court. _Id_. at p. 906a.   He raised the sole issue that trial counsel was ineffective for failing to object to the testimony of Brian McNealy. _Id_. at p. 917a.

8

In a Memorandum Opinion dated November 10, 2003, the Pennsylvania Superior Court affirmed the Court of Common Pleas' denial of relief. _Id_. at pp. 964a-968a; _see_ Commonwealth vs. Colon, 841 A.2d 571 (Pa. Super 2003).

On April 20, 2004, Colon filed a petition for allocatur with the Pennsylvania Supreme Court, _id_. at pp. 969a-973a, which was denied on September 15, 2005. _See_ Commonwealth vs. Colon, 584 Pa. 705, 885 A.2d 40 (2005)(Table).   Colon did not file a petition for writ of certiorari with the United States Supreme Court.

On December 6, 2005, Colon filed the instant petition for writ of habeas corpus in which he raises the following challenges to his conviction and sentence:

    1.    The evidence at trial was insufficient to establish guilt beyond a reasonable doubt.

    2.    The trial court abused its discretion in sentencing petitioner.

    3.    The trial court committed reversible error in its instruction to the jury regarding a "jailhouse informant's" testimony.

    4.    Trial counsel was ineffective for not objecting to the introduction of petitioner's co-defendant's confession.

(Doc. No. 1, petition).   In accordance with United States vs.

9

Miller, 197 F.3d 644 (3d Cir. 1999) and Mason vs. Meyers, 208 F.3d 414 (3d Cir. 2000), the Court issued formal notice to Colon that he could either have the petition ruled on as filed, that is, as a § 2254 petition for writ of habeas corpus and heard as such, but lose his ability to file a second or successive petition, absent certification by the court of appeal, or  withdraw his petition and file one all-inclusive § 2254 petition within the one-year statutory period prescribed by the Antiterrorism Effective Death Penalty Act ("AEDPA").   (Doc. No. 3).   On February 13, 2006, Colon returned the notice of election form, indicating that he wished to proceed with his petition for writ of habeas corpus as filed.  (Doc. No. 4). Thus, a Show Cause Order was issued on February 17, 2006.  (Doc. No. 6).  On May 11, 2006, the District Attorney of York County filed a response to the petition, arguing that the petition for writ of habeas corpus is time barred.  (Doc. No. 12).  On June 2, 2006, Colon filed a traverse.  (Doc. No. 13).

By Order dated August 2, 2006, the Court determined the petition to be timely filed and directed respondents to answer the allegations in the petition.   (Doc. No. 14).   On August

25, 2006, a response to the petition was filed.  (Doc. Nos. 16-21).  Although provided an opportunity, petitioner did not filed a traverse.

## Standards of Review

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement.  Preiser vs. Rodriguez, 411 U.S. 475, 498-499 (1973).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle vs. McGuire, 502 U.S. 62, 67-8 (1991).  Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-8 (1991); see also Pulley vs. Harris, 465 U.S. 37, 41 (1984); Johnson vs. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

### A.   Exhaustion

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to

11

protect the rights of the applicant. <u>See</u> 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. <u>See</u> Werts vs. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan vs. Boerckel, 526 U.S. 838, 844-45 (1999). Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." Castille vs. Peoples, 489 U.S. 346, 351 (1989). Fair presentation also requires the petitioner to raise the claim in a procedural context in which the state courts can consider it on the merits. <u>Id</u>.

If a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will excuse the failure to exhaust and treat the claims as exhausted. Wenger vs. Frank,

266 F.3d 218, 223 (3d Cir. 2001);  Lines vs. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); see Teague vs. Lane, 489 U.S. 288, 297-98 (1989).   Although deemed exhausted, such claims are considered procedurally defaulted.  Coleman vs. Thompson, 501 U.S. 722, 749 (1991); Lines, 208 F.3d at 160.

A federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims.  See McCandless vs. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750-51; Caswell vs. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992).  To demonstrate cause for a procedural default, the petitioner must show that some objective external factor impeded petitioner's efforts to comply with the state's procedural rule.  See Murray vs. Carrier, 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, the petitioner must show "not merely that the errors created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire proceeding with error of constitutional dimensions."  See United States vs. Frady, 456

13

U.S. 152, 170 (1982).

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. See Edwards vs. Carpenter, 529 U.S. 446, 451 (2000); Wenger, 266 at 224. The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496.

In the matter sub judice, Colon has exhausted all but one of his claims. He failed to present to the state courts the claim that the "[t]rial court committed reversible error when it instructed the jury that it could consider the alleged confession of codefendant to jailhouse informant as evidence against this defendant." (Doc. No. 1, Ground Three, p. 9). Thus, this claim is unexhausted. Because procedural rules bar him from pursuing this unexhausted issue in state court, he has procedurally defaulted on this claim.[2] He has not averred

_____

[2]The time period for filing a PCRA has expired. See 42 Pa. Cons. Stat. § 9545(b)(1) (setting for a one year limitations period). Colon raises no argument, and the record suggests no possibility, that his claims fall within an

cause for or prejudice by the default. He has not demonstrated his actual innocence such that a lack of review by the court would constitute a fundamental miscarriage of justice. See <u>McCandless</u>, 172 F.3d at 260. Consequently, he is precluded from pursuing federal habeas corpus relief with regard to this issue. The remaining claims will be considered on the merits.

### B. **Merits**

Section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence

---

exception to the limitations period for filing a petition under the PCRA. See 42 PA. CONS. STAT. §9545(b)(1) (permitting petitions to be filed more than one year after judgment if the failure to raise the claim is attributable to government interference, the facts underlying the claim could not have been ascertained previously, or the claim involves rights newly recognized and retroactively applied by the Supreme Court).

presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Matteo vs. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Id.

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. Miller-El vs. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions) Matteo, 171 F.3d

16

at 888; Thomas vs. Varner, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. Campbell vs. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio vs. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); Porter vs. Horn, 276 F. Supp 2d 278, 296 (E.D. Pa. 2003); see also Torres vs. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson vs. Virginia, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." Breighner vs. Chesney, 301 F. Supp 2d 354, 364 (M.D. Pa. 2004) (citing

28 U.S.C. § 2254(d)(2) and (f)[3].  Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief.  <u>Porter</u>, 276 F. Supp 2d at 296; <u>see</u> <u>also</u> Williams vs. Taylor, 529 U.S. 362, 408-09 (2000); Hurtado vs. Tucker, 245 F.3d 7, 16 (1st Cir. 2001).  Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination.  <u>Porter</u>, 276 F. Supp 2d at 296; <u>see</u> <u>also</u> <u>Williams</u>, 529 U.S. at 408-09.

### 1.   **Sufficiency of the Evidence**

Colon claims that "the evidence presented at trial was insufficient in weight and as a matter of law to establish guilty beyond a reasonable doubt as to homicide or conspiracy." (Doc. No. 1, p. 6, Ground One).  In its analysis of the sufficiency of the evidence, the Pennsylvania Superior Court was guided by the following standard of review:

---

[3]"If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination."  28 U.S.C. § 2254(f).

> The law is well-settled that the test for
> determining the sufficiency of the evidence is
> whether, viewing the evidence in the light most
> favorable to the Commonwealth as the verdict winner,
> and drawing all proper inferences favorable to the
> Commonwealth, the trier of fact could have
> determined that all of the elements of the crime
> have been established beyond a reasonable doubt.
> Commonwealth v. Hagan, 539 Pa. 609, 613, 654 A.2d
> 541, 543 (1995). "[T]he Commonwealth may sustain its
> burden of proving every element of the crime beyond
> a reasonable doubt by means of wholly circumstantial
> evidence." Commonwealth v. Harper, 485 Pa. 572,
> 576, 403 A.2d 536, 538 (1979). The trier of fact is
> free to believe all, part, or none of the evidence
> presented. Commonwealth v. Griscavage, 512 Pa. 540,
> 546, 517 A.2d 1256, 1259 (1986).

(Doc. No. 20, pp. 791a-792a). The state superior court agreed

with the trial court's Opinion "that there was ample

circumstantial and direct evidence in the record from which

the jury could have inferred that Colon and Rodriguez

conspired to hire Byke to kill Day, that Colon and Rodriguez

were co-leaders of the drug ring and that they were co-

conspirators in the murder." Id. at p. 792a. The trial court

Opinion carefully reviewed the factual record and concluded

that "there was sufficient evidence from which the jury could

have found a Conspiracy to Commit Homicide as opposed to a

Conspiracy to Commit Aggravated Assault as argued by

defendant" and that the "circumstantial inferences more than

19

sufficiently establish that Jason Colon encouraged or facilitated the commission of the crime of homicide." (Doc. 20, pp. 784a-785a).

Both the trial court and superior court's analysis is clearly in accord with applicable federal law. Sufficiency of the evidence claims are governed by Jackson vs. Virginia, 443 U.S. 307 (1979), in which the Supreme Court held that the question for habeas courts is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319.

When historical facts support conflicting inferences, the habeas court must presume that the trier of fact resolved those conflicts in favor of the prosecution. Id. at 326. The habeas court must also consider the types of evidence the state courts deem relevant to prove the elements of the offense at issue because the elements of the criminal offense are defined by state law. Id. at 324 n. 16.

With regard to the charge of third degree murder and conspiracy to commit murder, it is Colon's position that "the only evidence presented against me was (if anything) that I

20

was part of a conspiracy to 'beat up' the victim if he did not cooperate when questioned in re the assault upon and theft from the residence of an acquaintance" and that "all witnesses testified that I was 'just their' but had not spoken in re any intentions."  (Doc. No. 1, p. 6).

Under Pennsylvania law, third degree murder is defined as "all other kinds of murder" other than first degree murder or second degree murder.   18 Pa. Cons.Stat. § 2502(c).  The elements of third degree murder, as developed by case law, are a killing done with legal malice.  Commonwealth vs. MacArthur, 427 Pa.Super.  409, 629 A.2d 166, 167 (Pa.Super.Ct.1993).  In MacArthur, the Pennsylvania Superior Court defined malice as:

> When an individual commits an act of gross recklessness for which he must reasonably anticipate that death to another is likely to result, he exhibits the wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind of social duty which proved that there was at that time in him 'the state or frame of mind termed malice.

Id. at 168 (quoting Commonwealth vs. Malone, 354 Pa. 180, 47 A.2d 445, 447 (Pa.1946) (internal quotations omitted)).

> Under Pennsylvania law, a defendant commits the crime of criminal conspiracy if:
> "(1) the defendant intended to commit or aid in the

21

commission of the criminal act; (2) the defendant
entered into an agreement with another (a 'co-
conspirator') to engage in the crime; and (3) the
defendant or one or more of the other co-
conspirators committed an overt act in furtherance
of the agreed upon crime."

Commonwealth vs. Murphy, 577 Pa. 275, 292 (2004).[4]

The trial court held that there was sufficient evidence
to support the first degree murder conviction, relying on the
following evidence:

----

[4]The statutory language reads as follows:

**(a) Definition of conspiracy.**--A person
is guilty of conspiracy with another person
to commit a crime if with the intent of
promoting or facilitating its commission
he:

(1) agrees with such other person or
persons that they or one or more of them
will engage in conduct which constitutes
such crime or an attempt or solicitation to
commit such crime; or

(2) agrees to aid such other person
or persons in the planning or commission of
such crime or of an attempt or solicitation
to commit such crime.

18 Pa.C.S. § 903(a). Additionally, section 903(e) has an
overt-act requirement: "[n]o person may be convicted of
conspiracy to commit a crime unless an overt act in pursuant
of such conspiracy is alleged and proved to have been done by
him or by a person with whom he conspired."

22

Defendant's argument assumes that the conspiracy occurred at the time when Rodriguez and Colon discussed the proposed encounter with the victim with the other underlings of their drug ring, and made arrangements to lure the victim to a place of confrontation.  To the contrary, the evidence could be interpreted that Rodriguez and Colon, as leaders of the ring, reached the agreement between themselves.  Therefore the testimony of the other participants would only have been to the instructions to them a to how their part in the activities were to be conducted.  Although the other participants could not speak of hearing a direct conversation between Rodriguez and Colon, an agreement between Rodriguez and Colon could still be inferred from their conduct.  From the testimony, the plan was fully formed and ready to be put into action.  Adam Byke had been contacted, and was on his way prior to the discussions with Michelle Ocasio, Monique Wells and Jason Nesbit.  Therefore the fact that Rodriguez and Colon may have led their underlings to believe that they were only going to interrogate or beat up the victim does not mean that the jury could not have inferred that Rodriguez and Colon had actually agreed between themselves that the victim would be killed.  This can be inferred from the fact that Rodriguez and Colon brought a known "hitman" from New York, and that when the victim was lured into the presence of the "hitman," the victim was immediately killed.  Therefore there was sufficient evidence from which the jury could have found a Conspiracy to Commit Homicide as opposed to a Conspiracy to Commit Aggravated Assault as argued by defendant.

Defendant next argues that Jason Colon did not engage in any overt acts to further the conspiracy. The Court would disagree with that factual statement. However, even if it were true, it would not matter.  Once the agreement is established, an overt act by anyone who is part of the conspiracy is

sufficient to establish a legal responsibility for
all of the persons who entered into the agreement.

Defendant Colon's second argument is that there was
insufficient evidence to establish that he was an
accomplice to third degree murder.  Defendant again
argues that he was merely present when the killing
occurred, and that he did not take any actions, such
as making arrangements to bring the "hitman" from
New York, nor to direct the other participants to
lure the victim to the scene, nor was he the person
who actually shot the victim.

To the contrary, the Court finds that there was more
than sufficient evidence to show Mr. Colon's
involvement as an accomplice.  He was a co-leader of
the drug ring.  It could be inferred that he had an
agreement with Rodriguez to deal with somebody
stealing their money and drugs.  Testimony was clear
that Rodriguez and Colon were acting in concert in
making arrangements to bring the "hitman" to York,
and in making arrangements to have others lure the
victim to the scene.  It also can be inferred that
it was planned in advance to kill the victim given
that a "hitman" was brought in for that purpose, and
that the killing occurred immediately upon the
victim arriving on the scene.  These circumstantial
inferences more than sufficiently establish that
Jason Colon encouraged or facilitated the commission
of the crime of homicide.

(Doc. No. 20, pp. 783a-785a).  The trial court's analysis is

cogent and entirely consistent with federal standards.  Colon

is not entitled to relief on this claim.

   **2.   Excessive Sentence**

Petitioner claims that the trial "court abused its discretion in imposing an excessive sentence that essentially amounted to a life sentence and misconstrued applicable guidelines." (Doc. No. 1, p. 7).

Habeas relief is only available for violations of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254 (a). The United States Supreme Court has held that habeas matters involving a state court's discretionary acts in sentencing proceedings are not subject to federal review, unless a specific constitutional claim is allegedly violated. See Estelle vs. McGuire, 502 U.S. 62, 67 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990); see also Jones vs. Superintendent of Rahway State Prison, 725 F.2d 40, 42-43 (3d Cir.1984) (a federal court has no power to review a state-imposed sentence in a habeas matter unless it involves a violation of a specific constitutional right). Petitioner, herein has failed to argue that a specific constitutional violation occurred during his sentencing proceedings. (See Doc. No. 1, at p. 7). Indeed, "[a]bsent some constitutional violation, it is clear that, particularly in the area of state sentencing guidelines, federal courts cannot review a state's

25

alleged failure to adhere to its own sentencing procedure."
Knight vs. Beyer, Civ. A. No. 88-3180, 1989 WL 68618, *6 (E.D.
Pa. June 22, 1989) (citing Branan v. Booth, 861 F.2d 1507,
1508 (11th Cir.1988)). Accordingly, a federal court will not
reevaluate a sentence in a habeas corpus proceeding unless it
exceeds the statutory limits. Jones vs. Superintendent of
Rahway State Prison, <u>supra</u>; see also Williams vs. Duckworth,
738 F.2d 828, 831 (7th Cir.1984), cert. denied, 469 U.S. 1229,
105 S.Ct. 1229, 84 L.Ed.2d 367 (1985) ("As a general rule,
federal courts will not review state sentencing determinations
that fall within statutory limits."); Bonner vs. Henderson,
517 F.2d 135, 136 (5th Cir.1975) ("This Court will not upset
the terms of a sentence within statutory limits unless so
disproportionate to the offense as to be completely arbitrary
and shocking."); Smith vs. Wainwright, 664 F.2d 1194, 1196
(11th Cir.1981) (although court will review alleged
impropriety in sentencing process itself, it will not consider
the severity of a sentence imposed within statutory bounds).

In the case at bar, petitioner's sentence does not exceed
statutory limitations. The trial court sentenced the
petitioner to a mandatory term of twenty (20) to forty (40)

26

years for murder in the third degree and a consecutive sentence of twenty (20) to forty (40) years on criminal conspiracy to commit murder.   Pursuant to 18 Pa.C.S.A. § 1102(c) and (d)respectively, conspiracy to commit murder and third degree murder carry with them a maximum penalty of forty years each. Pennsylvania state law vests trial courts with the discretion to impose consecutive or concurrent sentences as required by the facts of the case. See Commonwealth vs. Rickabaugh, 706 A.2d 826, 847 (Pa.Super.Ct.1997), appeal denied, 558 Pa. 607, 736 A.2d 603 (Pa.1999). In light of this law, petitioner's aggregate sentence of forty (40) to eighty (80) years falls within the statutory limits and, thus, is not subject to federal review.

### 3.   **Ineffective Assistance of Counsel**

To sustain a claim for ineffective assistance of counsel, a petitioner must show that counsel's performance was objectively deficient and that this deficient performance prejudiced his or her defense.  See Strickland vs. Washington, 466 U.S. 668, 687 (1984).[5]  The court must defer to counsel's

---

[5]The performance and prejudice prongs of Strickland may be addressed in either order, and, "[i]f it is easier to dispose

27

tactical decisions, avoiding "the distorting effects of hindsight," and give counsel the benefit of a strong presumption of reasonableness. <u>See</u> <u>id</u>. at 689; Gov't of the Virgin Islands vs. Weatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996). Considering the ineffective assistance of counsel claim, the Pennsylvania Superior Court articulated a standard which is clearly in line with prevailing federal law:

> To prevail on a claim of ineffective assistance of counsel, an appellant must prove the following:
> (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused him prejudice. Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. This standard is the same in the PCRA context as when claims of ineffective assistance of counsel are raised on direct review.
> <u>Commonwealth v. Pierce</u>, 786 A.2d 203 (2001)(citations omitted).

(Doc. No. 21, p. 967). Colon does not argue that this decision was contrary to, or involved an unreasonable

---

of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

application of, clearly established federal law.

Colon contends that the state courts' conclusion that counsel was not ineffective is insupportable and based on an unreasonable determination of the facts in light of the evidence presented. (Doc. No. 1, p. 10). Specifically, he argues that:

> McNealy testified specifically that my codefendant told him in prison that I and other named individuals were in the car with codefendant when they went to the location where the victim was shot and killed. Though the PCRA court deemed this statement to be non-prejudicial, it had the effect of implicating me in a plot to murder the victim, as opposed to just 'beating him up', where no other evidence was presented that any plot existed to kill the victim. Moreover, the court told the jury they could use this statement against me. Codefendant did not testify, testimony was impermissible hearsay and was given after conclusion of all conduct resulting in charges/arrest. Counsel never objected to admission of this testimony.

Id. Although the superior court dismissed this contention without elaboration, the PCRA court addressed the issue at length as follows:

> First, McNealy's statement contained references only as to what Felix Rodriguez or Adam Byke did. The only mention of Jason Colon was that he was present. At trial, many witnesses established that Jason Colon was present when the shooting occurred, and Jason Colon never argued that he wasn't. Colon

29

merely argued that Adam Byke was acting on his own, and that there was no conspiracy between Rodriguez and Colon to hire Byke to commit the killing.

Therefore even if it was error for McNealy to testify that Rodriguez said that Colon was present, it was at most harmless error since Colon's presence was established by several other witnesses and not disputed by Colon.

Colon also argues that the Court further compounded the error by telling the jury that if they believed McNealy's testimony that Rodriguez admitted to arranging to have Byke commit the killing and that the jury further found that Jason Colon was an accomplice they could find Colon guilty based on the actions of Rodriguez.

The Court would note that the three co-conspirators, Nesbit, Ocasio and Wells, testified that Rodriguez and Colon were acting in concert and were accomplices. Their testimony was admissible because they were present at the time the events occurred, and were reporting the statements of fellow co-conspirators/accomplices. Therefore, McNealy's testimony about what Rodriguez said would have merely been cumulative, and therefore at most harmless error.

However, the Court still believes it was correct in saying that if the jury found that Rodriguez was guilty by virtue of McNealy's statement and then separately (as the Court instructed) the jury (without considering McNealy's testimony) found Colon to be an accomplice, the jury could find Colon guilty on that basis.

The instruction clarified for the jury that they could not use McNealy's statements about what

30

Rodriguez said directly as evidence to convict
Colon.   Essentially, the Court recognized that
McNealy's statement as to what Rodriguez said was
hearsay as to Colon.   Therefore the Court required
that the jury have (sic) to find independently of
McNealy's statement that Colon was an accomplice.
However, if using McNealy's statement about what
Rodriguez said (along with any other evidence the
jury considered) the jury found Rodriguez guilty,
and that independent of McNealy's statement of what
Rodriguez said they found that Colon was an
accomplice of Rodriguez they could find Colon guilty
based on the actions of Rodriguez.

Therefore, the Court believes the jury was properly
instructed regarding the use of McNealy's testimony
about what Rodriguez said and how it may be used in
regard to Colon.   Thus, counsel was not ineffective
for not objecting to the Court's instruction.

(Doc. No. 21, pp. 933a-934a).   There is no question that the

state court decision was based on a reasonable determination

of the facts in light of the evidence presented.   Colon is not

entitled to relief on this claim.   An appropriate order is

attached.


s/Malcolm Muir
MUIR
United States District Judge

31

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JASON COLON,                          :
                                      :
          Petitioner                  :   No. 4:CV-05-2519
                                      :
      vs.                             :   (Complaint Filed 12/06/05)
                                      :
LOUIS FOLINO,                         :   (Judge Muir)
                                      :
          Respondent                  :


**<u>ORDER</u>**

January 11, 2008

Upon consideration of the petition for writ of habeas corpus (Doc. No. 1), and for the reasons set forth in the foregoing memorandum, **IT IS HEREBY ORDERED THAT:**

1.   Petitioner's claim that the "[t]rial court committed reversible error when it instructed the jury that it could consider the alleged confession of codefendant to jailhouse informant as evidence against this defendant." (Doc. No. 1, Ground Three, p. 9)is **DENIED** due to procedural default.

2.   All remaining claims presented in the petition are **DENIED** based upon petitioner's failure to demonstrate that (1) the applicable state court decisions were

either contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) that those decisions were based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding as provided in 28 U.S.C. § 2254(d)(1) and (2).

3.   The Clerk of Court is directed to **CLOSE** this case.

4.   There is no basis for the issuance of a certificate of appealabilty.  <u>See</u> 28 U.S.C. § 2253(c).


<u>s/Malcolm Muir</u>
MUIR
United States District Judge